IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JANARIOUS SMITH          :
(AIS# 268812),           :
                         :
    Plaintiff,           :
                         :
vs.                      :        CIVIL ACTION 14-0299-WS-M
                         :
RONZELLA HOWARD, *et al.*, :
                         :
    Defendant.           :

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the motion for summary judgment of Defendants, Ronzella Howard, Dexter Brown, and Sharon Langham.  For the reasons stated below, it is recommended that the motion for summary judgment of Defendants be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

I.   **FACTUAL AND PROCEDURAL BACKGROUND.**

Plaintiff Smith is currently serving a 21-year sentence for robbery and is within the custody of the Alabama Department of Corrections.  (Doc. 1 at 6).  Since

the inception of his sentence he has been imprisoned at multiple state facilities, including G.K. Fountain Correctional Center, Holman Correctional Facility, and St. Clair Correctional Facility.  (Doc. 25-7 at 3-5).  Smith brings this suit against the defendants for failing to protect him from an alleged assault by another inmate that occurred while incarcerated at Holman Correctional Facility ("Holman"), a state maximum security prison, on April 30, 2014. (Doc. 1 at 8-10).

While imprisoned at Holman, Smith was consistently held in the Segregated Housing Unit rather than general population due to poor behavior.[1]  (Doc. 1 at 8, Doc. 25 at 3-4).  The Segregation Unit at Holman is comprised of two facilities: 1) the segregation annex (a three tier building which holds units K, L, M) and 2) the Q-side (which holds unit Q).  (Doc. 1 at 8; Doc. 25 at 4; Doc. 25-3 at 2).  The Q-side of the segregation unit is located approximately sixty yards east of the segregation annex and is used for as a holding unit for processing inmates into segregation

---

[1]    Smith has received 35 disciplinary charges since he began serving his prison sentence in 2009.  (Doc. 25-7 at 3).  Due to this pattern of troublesome behavior, Smith was placed on "routine segregation rotation" which entailed being transferred quarterly between the three level five security prisons in Alabama, Holman, St. Clair Correctional Facility and Donaldson Correctional Facility.  (Doc. 25-6 at 2; Doc. 25-11 at 7-8).

and for holding inmates removed from the segregation annex
due to excessive negative behavior or maintenance issues.
(Doc. 25-3 at 1).  Q-side is a two-tier facility with
fourteen single-man cells on each tier.  (Doc. 25-3 at 2).

On April 24, 2014, Smith was moved from the
segregation annex to Q-side,[2] and the following day Smith's
validated enemy,[3] Terrance Mosley, was also transferred to
Q-side.[4]  Mosley was placed in cell 16, located on the top
tier of unit Q, while Smith was housed in cell 2, located
on the bottom tier of unit Q.  (Doc. 25 at 4-5).  The two

---

[2]    The records of the Alabama Department of Corrections
reflect that Smith was suffering from paranoid delusions on
April 24, 2014 and was given medication to treat the same.
(Doc. 25-10 at 13).  He indicated to his mental health
provider on April 25, 2014 that he had been transferred to
unit Q for a "time-out."  (*Id*. at 10).
[3]    On April 23, 2013, at St. Clair Correctional Facility,
inmate Mosley attempted to attack Smith with a handmade
knife before being restrained by a correctional officer.
(Doc. 25 at 3).  Due to the incident, Smith and Mosley were
validated as enemies on May 21, 2013 (Doc. 25-7 at 6-7).
While Smith and Mosley both submitted written requests on
or about April 1, 2014 to have their enemy status revoked,
the requests were denied, and at the time of the allegation
contained in this § 1983 action, Smith and Mosley were and,
to the Court's knowledge, are validated enemies.  (Doc. 25-
7 at 25)
     The Alabama Department of Corrections records also
list two other inmates who were validated as enemies of
Smith after Smith slipped his handcuffs off his wrists on
two separate occasions while housed in the segregation unit
and stabbed and attempted to stab other inmates.  (Doc. 25-
7 at 7).
[4]    Inmate Mosley was moved due to his throwing an unknown
liquid from his assigned cell in attempt to hit a "runner."
(Doc. 25-3 at 2).

inmates were housed alone in single-man cells, secured within barred doors, and located on different tiers of the facility, where entrance to the tiers is obtained only through locked gates which are videoed monitored.  (Doc. 25-2 at 2; Doc. 25-3 at 2-3).

Once aware that Mosley was being housed in Q-side with him, Smith claims he informed Lieutenant Langham "that Terrance Mosley was [his] enemy and he'd tried to kill [him] in the past." (Doc. 1 at 8).  To the contrary, Defendant Langham avers that Smith told her he did not like inmate Mosley, but never explained why, never mentioned Mosley was his enemy, and never expressed fear for his safety.  (Doc. 25-2 at 2-3).

Smith claims, and Defendant Lieutenant Brown affirmed by affidavit, that Smith asked Brown to let Captain Howard know he needed to speak with her.  (Doc. 1 at 8-9).  Upon conveying this request to Captain Howard, Defendant Brown was instructed by Howard to attempt to handle Smith's concern.  (Doc. 25-1 at 1).  Due to his meeting with Howard being denied, Smith informed Defendant Brown that "Terrance Mosley was [his] validated enemy and [he] needed to move out the block with him."  (Doc. 1 at 9).  Brown relayed Smith's concerns to Captain Howard but insisted Smith was safe and should never come in contact with Mosley since the

4

two inmates being located on separate tiers.  (Doc. 25-2 at 1).  Smith further alleges, and Brown denies, that Defendant Brown told inmate Mosley "he needed to kill" Smith.  (*Id.*; Doc. 1 at 9).

On April 30, 2014, Smith claims that from his cell he called for an officer but was told there were none available, and "moments later Terrance Mosley snuck up on [him] and grabbed [his] arm.  [Mosley] cut [Smith] several times before [Smith] was able to pull away."  (Doc. 1 at 9).  According to Smith, Mosley then walked away, and, thereafter, Smith overheard Captain Howard speaking with Mosley.  (*Id.*).  After Mosley was secured in his cell, Smith requested medical treatment, and Officers Owens and Daily responded to his call.  (*Id.*).  The officers handcuffed Smith and began escorting him to the healthcare unit, but Smith interrupted the transfer and requested to speak with Captain Howard instead of a doctor.  (*Id.*). This request was refused, and Smith was returned to his cell where he declined to have his handcuffs removed. (*Id.*).  The officers, therefore, left Smith in his cell wearing his handcuffs, but returned shortly and informed Smith that Captain Howard had agreed to meet with him. (*Id.* at 10).

During his meeting with Howard, Smith inquired why Mosley was housed in the same unit as he, and according to Smith, Howard maintained she thought the two inmates "would be alright." (*Id.*).  Smith was then sent to the healthcare unit and received a body chart that reflected "superficial scratches" on his left chest area and one scratch on his left forearm.[5]  (Doc. 25-7 at 10).  Following his examination in the healthcare unit, Smith was transferred from Q-side and placed within the segregation unit.  (Doc. 1 at 10).

In response to the allegations in Smith's complaint, the defendants produced records from the Alabama Department of Corrections, incident and medical reports related to the complaint allegations, and affidavits from the defendants and other officers with personal knowledge of the details of this action.  (Docs. 25, 29).  These materials shine a different light on Smith's unsupported allegations, and, notably, Smith has failed to respond to Defendants' statements of events which are as follows:

Officer Burroughs avers by affidavit that on April 30, 2014, at approximately 11:30 am he observed Mosley out of his top tier Q-side cell.  (Doc. 25-4 at 1).  Mosley came

---

[5]     While receiving his body chart, Smith stated to the nurse in the healthcare unit, "I'm gonna kill that ass nigga."  (Doc. 25-7 at 10).

6

down to the lower tier and stood within the grill gate area and requested to see Captain Howard. (*Id.* at 2). However, Mosley never approached the locked gate that gives access to the bottom tier. (*Id.*). Consequently, Mosley never entered into the lower tier where Smith was housed. (*Id.* at 1-2). Captain Howard and another officer secured Mosley in handcuffs, escorted him to the shift office, and then Mosley returned to his cell without incident. (*Id.* at 1-2).

Officer Owens affirmed by affidavit that at approximately 2:30 p.m. on April 30, Smith reported suffering from chest pains and requested a transfer to the healthcare unit. (Doc. 25-5 at 1). Upon handcuffing Smith with his hands behind his back and removing him from his cell, Smith denied any chest pains and requested instead to speak with Captain Howard. (*Id.*). Officer Owens communicated to Smith that Captain Howard was unavailable at that time, and Smith was returned to his cell. (*Id.* at 1-2). Once secured in his cell, he refused to allow the removal of his handcuffs. (*Id.* at 2). Approximately 10 minutes later, Defendant Langham and Officer Owens returned to Smith's cell to remove his handcuffs, when they observed Smith was shirtless and had removed his left hand from the cuffs. (*Id.*). The officers also noticed bleeding

7

scratches on the left side of Smith's chest, but no blood was seen on his shirt.  (*Id*.).  When questioned about the superficial wounds, "Smith responded that an unknown inmate had scratched him with a razor," but Smith could not explain how he received the cuts while housed alone in a single-man cell, nor would Smith identify the inmate who allegedly attacked him.  (Doc. 25-2 at 2; Doc. 25-5 at 2; Doc. 25-7 at 8).

Smith filed this § 1983 action with the Court on June 27, 2014 claiming that Ronzella Howard, as supervisor of the segregation unit, and Dexter Brown and Sharon Langham, as officers who knew he was in danger, failed to protect him from being attacked by inmate Mosley in violation of the Eighth Amendment.  (Doc. 1 at 7).  He seeks injunctive and monetary relief in the amount of $20,000.00.[6]  (*Id*.). Defendants answered the suit and filed special reports (docs. 24, 25, 28, 29), which the Court converted to a motion for summary judgment.  (Doc. 30).  Although provided ample opportunity, Smith has failed to respond to

_____

[6]    The requested injunctive relief is moot as Smith is no longer imprisoned at Holman but has been transferred to St. Clair Correctional Facility in Springville, Alabama.  (Doc. 18).

defendants' motion for summary judgment.[7]  As such, the
motion is ripe for consideration.

## II.   SUMMRY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that
there is no genuine dispute as to any material fact and
that the movant is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510,
91 L.Ed.2d 202 (1986) ("The mere existence of some alleged
factual dispute between the parties will not defeat an
otherwise properly supported motion for summary
judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165
(11th Cir. 2009) ("[S]ummary judgment is appropriate even
if 'some alleged factual dispute' between the parties
remains, so long as there is 'no genuine issue of material
fact.'").

---

[7]    Defendants' responses were converted to a motion for
summary judgment on December 30, 2014.  (Doc. 30).  On
January 28, 2014, Smith filed a motion to appoint counsel
(doc. 32), which was denied by the Court on January 30.
(Doc. 33).  Smith has subsequently failed to submit any
other filings or documents pertaining to this action.  A
district court, however, may not "base the entry of summary
judgment on the mere fact that the motion was unopposed
but, rather, must consider the merits of the motion."  *Trs.
Of Cent. Pension Fund of Int'l Union of Operating Eng'rs &
Participating Emp'rs v. Wolf Crane Serv., Inc.*, 374 F.3d
1035 (11th Cir. 2004) (internal quotation marks omitted).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen*, *supra*, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'") (internal citations omitted); *see Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving

party discharges its initial burden of showing that there
is an absence of evidence to support the non-moving party's
case, the non-moving party must specify facts proving the
existence of a genuine issue of material fact for trial
confirmed by affidavits, 'depositions, answers to
interrogatories, and admissions on file.'") (internal
quotations and citations omitted).

> Forbidding reliance upon pleadings precludes a
> party from "choos[ing] to wait until trial to
> develop claims or defenses relevant to the
> summary judgment motion." . . . This effectuates
> the purpose of summary judgment which "'is to
> pierce the pleadings and to assess the proof in
> order to see whether there is a genuine need for
> trial.'" . . . Thus, "mere general allegations
> which do not reveal detailed and precise facts"
> will not prevent the award of summary judgment
> upon a court's determination that no genuine
> issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592
(11th Cir.), *cert. denied sub nom. Jones v. Resolution
Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33
(1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146
F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must
raise 'significant probative evidence' that would be
sufficient for a jury to find for that party.").  In other
words, there is no genuine issue for trial "[w]here the
record taken as a whole could not lead a rational trier of
fact to find for the non-moving party[.]" *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer*, *supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether Defendants are entitled to summary judgment in this action, the Court has viewed the facts in the light most favorable to Plaintiff. *Comer*, *supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski*, *supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp.*, *supra*, 43 F.3d at 599.

12

**III. LAW & ANALYSIS**

Plaintiff Smith alleges Defendants violated his Eighth Amendment rights by failing to protect him from the physical attack of inmate Mosley, who was known to be his enemy.  Defendants, however, deny the allegation and further assert that they are entitled to summary judgment on Smith's claims against them as they are protected by the affirmative defenses of sovereign and qualified immunity.

A.   Immunity Defenses.

The Eleventh Amendment protects Defendants in their official capacities from Smith's claims.  *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (With some exceptions, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." (citations omitted)); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) ("[S]tate officials sued in their official capacity are []protected by the [Eleventh A]mendment." (citing *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985))).  In addition, "a state agency[] and a state official sued in his official

capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable..." *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1524 (11th Cir. 1995) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)).  Thus, Smith may not sue Defendants in their official capacities.

Defendants, however, are not absolutely immune from suit in their individual capacities, but are protected by qualified immunity.

> Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place. *See Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1184 (11th Cir. 2009). "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Lee[ v. Ferraro], 284 F.3d [1188,] 1194 [(11th Cir. 2002) ](citation omitted) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)). Qualified immunity is a defense not only from liability, but also from suit... *See id.*

> "Under the well-defined qualified immunity framework, a 'public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) (quoting *Lee*, 284 F.3d at 1194). Once the official has done so, the burden shifts to the plaintiff to satisfy the following two-pronged inquiry: (1) whether the

> facts that a plaintiff has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 232, 129 S. Ct. 808...The Supreme Court recently has made it clear that [courts] need not employ a rigid two-step procedure, but rather may exercise [their] discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236, 129 S. Ct. 808.

*Gilmore v. Hodges*, 738 F.3d 266, 272-73 (11th Cir. 2013). "Under controlling law, the plaintiff[] must carry [his] burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or [the highest court of the state from which the case arose]." *Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002).

The record evidence amply supports the determination that all Defendants were acting within the scope of their discretionary authority as prison officials at the time of the wrongful act at issue, and Smith offers no evidence or argument to the contrary.  Accordingly, the burden now shifts to Smith to show why the defendants are not entitled to qualified immunity.

B.   Failure to Protect.

Prison officials have an obligation to protect prisoners from violence inflicted upon them by other prisoners. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). Prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984). Only "[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

Thus, a prisoner-plaintiff must first demonstrate "an objectively substantial risk of serious harm to prisoners." *Id.* at 1028-29. Then, the plaintiff must show that the defendant was deliberately indifferent, which requires the following: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (internal quotation marks omitted).

*Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).

The objective component of an Eighth Amendment claim described above requires that the alleged deprivation be "objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing

penological goals." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993)) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." *Sims v. Mashburn*, 25 F.3d 980, 983-84 (11th Cir. 1994) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). Smith must prove Defendants acted with the required state of mind, which is "deliberate indifference" to his safety. *Id.* (citations omitted).

There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." *Farmer*, 511 U.S. at 838.  It is not enough that a plaintiff proves that the defendant should have known of the risk; *conscious awareness is the key*. *See*, *e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996). "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Hale v. Talapoosa*

17

*Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995) (quoting *Farmer*, 511 U.S. at 842).  "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer*, 511 U.S. at 842). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*, 511 U.S. at 844-45 Having set forth the general legal principles relevant to Plaintiff's claims, the Court now turns to the application of those principles to the facts before the Court.

Smith claims that Defendants Brown and Langham "knew that plaintiff was in danger [by being housed in Unit Q alone with Mosley] and had a duty to protect plaintiff" from Mosley but failed to do so.  (Doc. 1 at 5-6).  The record before the Court however belies this claim.

The law is clear "that a prison guard violates a prisoner's Eighth Amendment right when that guard actually (objectively and subjectively) knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any action to investigate, mitigate, or monitor that substantial risk of serious harm." *Caldwell*, 748 F.3d at 1102 (citing *Cottone v. Jenne*, 326 F.3d 1352, 1358-60 (11th Cir. 2003); *Hale,* 50 F.3d at 1584; and

*LaMarca,* 995 F.2d at 1536-38).  However, the uncontroverted evidence before the Court shows that Defendants took sufficient and abundant precautions to prevent harm to Smith while incarcerated at Holman.  For instance, at Holman Smith was constantly housed in the segregation unit, solitarily confined away from his known enemies. (Doc. 25 at 3-4).  On April 30, 2014, while being held in unit Q along with Mosley, the two inmates were placed in individual cells, with barred doors; they were housed on separate tiers that where secured by locked, video monitored gates. (Doc. 25-4 at 1).  The sworn affidavits produced, along with Smith's recitation of facts, evidence that when inmates were moved from unit Q, they were handcuffed and escorted by guards.  These safeguards and procedures not only refute acts of deliberate indifference, they reflect that Defendants endeavored to protect Smith. The design of Q-side and the placement of enemy inmates on different tiers provides sufficient separation of the inmates and substantiates that the defendants were mindful of security issues and took necessary precautions to ensure the safety of inmates, including Smith on April 30, 2014.

    Thus, Smith has failed to show that simultaneous housing of validated enemies within Q-unit, as described in his complaint, is an objectively serious risk, and,

therefore, Smith has failed to carry his burden of proving Defendants were deliberately indifferent to his safety.[8]

Additionally, while prison officials have a duty under the Eighth Amendment is to ensure "reasonable safety" of inmates, *Farmer*, 511 U.S. at 844, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983...The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (quotations omitted).  To prove his asserted claim of failing to protect, Smith is "required to produce evidence that, with knowledge of the substantial risk of serious harm, [Langham and Brown] knowingly or recklessly 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).  Taking all of Smith's allegations as true,

---

[8]   In the alternative, had Smith successfully shown a constitutional violation due to his housing situation, Defendants Brown and Langham would be entitled to qualified immunity as Smith has failed to provide any law providing a clearly established right at the time of the complained of incident for inmate enemies to be housed in separate segregation facilities. *See Gilmore v. Hodges*, 738 F.3d 266, 272-73 (11th Cir. 2013).

including being assaulted by Mosley, Smith has failed to
show that Defendants had the requisite subjective knowledge
of harm necessary to prove a constitutional violation given
that he never reported an actual threat of harm to any
defendant.

The Eleventh Circuit has repeatedly found a prisoner's
informing (or the failure to inform) of a threat or fear of
one's life to officers, while not dispositive, is a
significant factor in assessing failure to protect claims.
*Compare Brown,* 894 F.2d at 1537 (Plaintiff's report of a
"racial problem," without specifying a threat, imminent
attack, or fear of an attack, was insufficient to carry his
burden of proving defendants had subjective knowledge of a
risk of harm.); *Carter v. Galloway*, 352 F.3d 1346, 1349-50
(11th Cir. 2003) (*per curiam*) ("[G]eneralized awareness of
risk" to plaintiff, supported by plaintiff's complaints
that cellmate "acted crazy, roam[ed] his cell like a 'caged
animal'" coupled with defendants knowledge of cellmate's
history of violent behavior, was insufficient to prove
"subjective awareness" of a risk of harm.); *Chatham v.
Adcock*, 334 F. App'x 281, 293-94 (11th Cir. 2009) (*per
curiam*) (No subjective knowledge or deliberate indifference
shown where plaintiff failed to identify a specific
"serious threat" reported to defendant officers, despite

claims that he was repeatedly threated prior to being assaulted.); *Lavender v. Kearney,* 206 F. App'x 860, 863-64 (11th Cir. 2006) ("General knowledge about an inmate's violent tendencies, without more specific information about the risk, does not constitute deliberate indifference.").

Smith alleges he told Defendants Langham and Brown that Mosley was his enemy and requested to be moved from the housing unit.  Defendant Langham affirmed that Smith "never verbalized that he feared for his safety or believed that inmate Mosley would attack him"  (Doc. 25-2 at 2-3). Similarly, Defendant Brown affirmed that he believed the two inmates were safe given that they were being held on separated, locked tiers, in locked single-man cells, and were handcuffed and escorted by officers whenever moved from their cells.  (Doc. 25-1).  Brown informed Smith that he and Mosley should never come in contact given the security measures in force. (*Id.*).  Notably, Smith's complaint is devoid of any allegation that he articulated an actual threat to any defendant; nor does Smith deny Defendants' claims that they were not notified of an actual threat.  Just as in the cases cited above, Smith's complaint lacks facts evidencing the defendants' knowledge of an actual, specific threat; therefore, Smith has failed to carry his burden of proving defendants had subjective

awareness that Smith was at a sufficient risk of harm.
Also, Smith relies solely on the conclusory allegations of
his complaint and provides no further support of his claims
to overcome Defendants' motion for summary judgment. *See
Allen*, *supra*, at 1314 ("'When a moving party has discharged
its burden, the non-moving party must then "go beyond the
pleadings," and show by its own affidavits, or by
"depositions, answers to interrogatories, and admissions on
file," designate specific facts showing that there is a
genuine issue for trial.'") (internal citations omitted);
*see also Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186,
1192 (11th Cir. 2001) ("Once the moving party discharges
its initial burden of showing that there is an absence of
evidence to support the non-moving party's case, the non-
moving party must specify facts proving the existence of a
genuine issue of material fact for trial confirmed by
affidavits, 'depositions, answers to interrogatories, and
admissions on file.'") (internal quotations and citations
omitted); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d
538 (1986)(there is no genuine issue for trial "[w]here the
record taken as a whole could not lead a rational trier of
fact to find for the non-moving party[.]").  Therefore,
given that Smith fails to plead that he disclosed a threat

of harm to defendants and Smith fails to dispute the
affirmations of Defendants Langham and Brown, the
undersigned concludes there is no evidence of deliberate
indifference in this action.

Defendants knew Smith and Mosley were enemies but
never did any Defendant believe Smith was in danger due to
the extreme safe guards in place within the segregation
unit.  See *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d
611, 619-20 (11th Cir. 2007) ("'[P]rison officials who
actually knew of a substantial risk to inmate health or
safety may be found free from liability if they responded
reasonably to the risk, even if the harm ultimately was not
averted.' More succinctly, 'prison officials who act
reasonably cannot be found liable under the Cruel and
Unusual Punishments Clause.'" (quoting *Farmer*, 511 U.S. at
844-45) (internal citation omitted)).  Accordingly, taking
the entirety of Smith's claims as true, despite many of his
allegations being refuted by record evidence, Smith fails
to prove deliberate indifference on the part of Defendants;
it is therefore recommended that motion for summary
judgment should be granted in favor of Defendants Brown and
Langham.

C.    Respondeat Superior Liability.

24

In his complaint, Smith claims Defendant Howard is liable for failing to protect him based on the fact that she is the Captain of the Segregation Unit "and is responsible for the administration of Holman Segregation, i.e., the placement and security of inmates."  (Doc. 1 at 5).  This claim is rooted in the theory of *respondeat superior*, that is, that Captain Howard, as a supervisor, is responsible for the prison staff's failure to protect Plaintiff from an inmate attack or for allowing simultaneous placement of two inmate enemies within the segregation unit.  In order to state a claim upon which relief can be granted in a § 1983 action, a plaintiff must establish a causal connection between each defendant's "actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights."  *Frankum v. Chapman*, 2009 WL 1118875, *3 (S.D. Ala. 2009) (citations omitted). Liability for an alleged constitutional violation cannot be established on the basis of a theory of *respondeat superior*.  *See Edwards v. Alabama Dep't of Corrs.,* 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . .").

"It is well established in this Circuit that
supervisory officials are not liable under § 1983
for the unconstitutional acts of their
subordinates on the basis of respondeat superior
or vicarious liability." *Hartley v. Parnell*, 193
F.3d 1263, 1269 (11th Cir. 1999) (internal
quotation marks and citation omitted); *Gonzalez*,
325 F.3d at ----, 2003 WL 1481583, at *4
(concluding supervisory officials are not liable
on the basis of *respondeat superior* or vicarious
liability). Instead, supervisory liability under
§ 1983 occurs either when the supervisor
personally participates in the alleged
unconstitutional conduct or when there is a
causal connection between the actions of a
supervising official and the alleged
constitutional deprivation. *Gonzalez*, 325 F.3d at
----, 2003 WL 1481583, at *5; *Brown v. Crawford*,
906 F.2d 667, 671 (11th Cir. 1990). The necessary
causal connection can be established "when a
history of widespread abuse puts the responsible
supervisor on notice of the need to correct the
alleged deprivation, and he fails to do so."
*Gonzalez*, 325 F.3d at ----, 2003 WL 1481583, at
*5 (quoting *Braddy v. Fla. Dept. of Labor &
Employment*, 133 F.3d 797, 802 (11th Cir.1998));
*Brown*, 906 F.2d at 671. Alternatively, the causal
connection may be established when a supervisor's
"'custom or policy ... result[s] in deliberate
indifference to constitutional rights'" or when
facts support "an inference that the supervisor
directed the subordinates to act unlawfully or
knew that the subordinates would act unlawfully
and failed to stop them from doing so." *Gonzalez*,
325 F.3d at ----, 2003 WL 1481583, at *5 (quoting
*Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.
1991)); *Hartley*, 193 F.3d at 1263; *see also Post
v. City of Ft. Lauderdale*, 7 F.3d 1552, 1560-61
(11th Cir. 1993). "The standard by which a
supervisor is held liable in [his] individual
capacity for the actions of a subordinate is
extremely rigorous." *Gonzalez*, 325 F.3d at ----,
2003 WL 1481583, at *4 (internal quotation marks
and citation omitted).

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). In instances where supervisory liability is based on a supervisor's custom or policy, a plaintiff must show that the custom or policy was "the 'moving force [behind] the constitutional violation.'" *Pinkney v. Davis*, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted). "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." *Id.* (citations omitted).

While Defendant Howard is the supervisor in charge of placement of inmates within the segregation unit, Smith has failed to prove that housing him and Mosley in Q-side equates to a constitutional violation. Defendants on the other hand have produced sufficient documentation and support that the housing of inmates in the same facility or unit is an acceptable practice per Holman prison and the Alabama Department of Corrections. (See Doc. 25-6 at 1 (Affidavit of Classification Specialist Angie Baggett affirming the practice of housing validated enemies in the same units when each is separated and housed in a single-man cell.); Doc. 25-3 at 2 (Affidavit of Warden Gwendolyn

Givens corroborating that "Q-side does provide sufficient separation of the inmates" and allows for enemy inmates to be safely confined to the same segregation unit.); Doc. 25-11 at 2-3 (Copy of the Alabama Department of Corrections Classification Manual dictating the transfer of validated enemies housed in general population but not requiring the transfer of enemies in segregation units).  Smith has failed to refute any of the defendants' statements or evidence.  Thus, even if Smith could show a constitutional violation to the custom or policy of housing inmate enemies in single-man segregation cells, Defendant Howard would be entitled to qualified immunity against this suit as Smith has failed to show the right was clearly established at the time of this action.  *Gilmore v. Hodges*, 738 F.3d 266, 272-73 (11th Cir. 2013).

Additionally, Smith has failed to prove any possible allegation of deliberate indifference on the part of Defendant Howard.  The record is devoid of evidence showing Howard placed the enemy inmates in Q-side with the purpose of causing harm, and the record indicates that in fact Howard appropriately investigated the alleged assault and responded proactively.  Defendant Howard submits via her affidavit that she questioned Smith who stated "Mosley, his

documented enemy, got out his cell and stabbed him thru the cell door." (Doc. 29-1 at 3). She also questioned Mosley who denied the allegation. (*Id*.). And, she further inquired about the situation with Officer Owens who reported that Smith did not have the scratches at the time he was secured in his cell with his handcuffs on. (*Id*.). Although Howard was unable to substantiate Smith's assault allegation, out of an abundance of caution, Howard removed him from Q-side and placed him in a cell in the segregation annex. (*Id*.). Therefore, the record is evident, and Smith fails to refute, that Q-side had sufficient safe guards in place to protect him, that the defendants lacked knowledge of any actual threat of harm to him, and that Defendant Howard took appropriate action to protect him upon learning of a threat of harm. *See Rodriguwz v. Sec'y for Dep't of Corr*., 508 F.3d 611, 619-20) (11th Cir. 2007) ("'[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" (quoting *Farmer*, 511 U.S. at 844-45)). Thus, it is recommended that summary judgment be granted in favor of Defendant Howard.

## IV. CONCLUSION

Smith has failed to show an Eighth Amendment constitutional violation on the part of the defendants. Based on the foregoing, the Court recommends that summary judgment should be granted in favor of Defendants Howard, Brown, and Langham and that Plaintiff Smith's action against Defendants be dismissed with prejudice.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 31st day of March, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE